UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KENYA M. TYSON,

                                                                             <u>DECISION AND ORDER</u>

                        Plaintiff,

                                                                             18-CV-0696L

              v.

ANDREW SAUL,
Commissioner of Social Security,

                        Defendant.
_____

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On March 6, 2014, plaintiff, then thirty-nine years old, filed an application for supplemental security income, alleging an inability to work since February 10, 2014. (Administrative Transcript, Dkt. #9 at 12). Her application was initially denied. Plaintiff requested a hearing, which was held on March 21, 2017 before Administrative Law Judge ("ALJ") Paul Georger. The ALJ issued a decision on May 22, 2017, concluding that plaintiff was not disabled under the Social Security Act. (Dkt. #9 at 12-20). That decision became the final decision of the Commissioner when the Appeals Council denied review on May 8 2018. (Dkt. #9 at 1-4). Plaintiff now appeals.

The plaintiff has moved for remand of the matter for further proceedings (Dkt. #12), and the Commissioner has cross moved (Dkt. #19) for judgment on the pleadings, pursuant to Fed. R.

Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the complaint is dismissed.

**DISCUSSION**

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records, with particular focus on her treatment notes for degenerative disc disease of the lumbar spine with disc herniation, cirrhosis of the liver, anxiety, obsessive-compulsive disorder, depression, and chronic Pancreatitis, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #9 at 14).

The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform light work, except that claimant can lift, carry, push or pull up to 20 pounds occasionally and 10 pounds frequently; can sit, stand and/or walk for up to 6 hours in an 8-hour workday; can climb ramps, stairs, ropes, ladders and scaffolds occasionally; can balance occasionally; can understand, remember and carry out simple, routine tasks; and can make simple, work-related decisions. (Dkt. #9 at 16). When provided with this RFC as a hypothetical at the hearing, vocational expert Robert E. Breslin testified that such an individual could return to plaintiff's past relevant work as a logging operations clerk, or in the alternative, could perform other light unskilled positions in the economy including cashier II, deli clerk, and cleaner/housekeeper. (Dkt. #9 at 18-19).

**I.     Treating Physician's Opinion**

Plaintiff first argues that the ALJ erred when he failed to apply the treating physician rule to the opinion of plaintiff's treating internist, Dr. Patrick Siaw.

It is well-settled that "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence."  *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).  In determining what weight to give a treating physician's opinion, the ALJ must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist.   20 C.F.R. §404.1527(d)[1].

Further, the ALJ must articulate his reasons for the weight he assigns to a treating physician's opinion.  *See Shaw*, 221 F.3d at 134.  *See also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).  An ALJ's failure to apply the treating physician rule factors and give good reasons for declining to grant controlling weight is typically reversible error.  "If, however, 'a searching review of the record' assures [the Court] that the substance of the treating physician rule was not traversed,'" and the record otherwise provides "good reasons" for the weight given to the treating physician's opinion, affirmance may be appropriate.  *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

Dr. Siaw, who treated plaintiff beginning in or before October 2011, rendered an opinion concerning plaintiff's impairments on June 9, 2015.  Dr. Siaw stated that plaintiff had permanent, advanced liver cirrhosis with encephalopathy (temporary worsening of brain function due to liver

---

[1] Changes to the Administration's regulations regarding the consideration of opinion evidence eliminate application of the "treating physician rule" for claims filed on or after March 27, 2017.  For the purposes of this appeal, however, the prior version of the regulation applies.

3

disease) and anemia, and that she was on a liver transplant list. (Dkt. #9 at 1361). Dr. Siaw opined that due to her liver cirrhosis and anemia, plaintiff is "very limited" in walking, standing, sitting, lifting, carrying, pushing, pulling, bending and negotiating stairs, as well as in her ability to function in a work setting at a consistent pace. *Id.* Dr. Siaw opined that plaintiff was disabled from working, and would remain so for at least 12 months, or until she received a new liver. (Dkt. #9 at 1362).

The ALJ acknowledged Dr. Siaw's status as a treating physician, but gave his opinion "little" weight, noting that other evidence of record – e.g., notes from a liver transplant consult in July 2014 – indicated that plaintiff would *not* require a liver transplant so long as she abstained from alcohol (Dkt. #9 at 959). The ALJ also observed that in the time since Dr. Siaw's opinion was rendered, plaintiff had not actually sought a transplant. (Dkt. #9 at 18).

The ALJ's assessment of Dr. Siaw's opinion, and its consistency (or lack thereof) with the medical evidence of record, was not erroneous. Plaintiff began treating with Dr. Siaw's office in or before October 11, 2012, and her treatment notes prior to March 2014 do not mention any liver-related issues or anemia. Plaintiff's liver failure was evidently not diagnosed until she was hospitalized for it in or around February 10, 2014, her alleged disability onset date. (Dkt. #9 at 504-16, 956). On March 5, 2014, Dr. Siaw confirmed that plaintiff was "recently in the hospital for alcohol related liver failure and she is recovering now." (Dkt. #9 at 501-502). On May 14, 2014, Dr. Siaw noted that plaintiff "says she is no longer drinking . . . [s]he is feeling better and her jaundice is clearing. Her labs generally show[] improvement." (Dkt. #9 at 496). On September 24, 2014, Dr. Siaw found that plaintiff was "clinically improving . . . and she may not need a [liver] transplant as previously thought." (Dkt. #9 at 1069). On October 27, 2014, Dr. Siaw noted that plaintiff had "been taken off the transplant list . . . since she is doing well," and

4

his subsequent treatment records for plaintiff make no mention of any decline in plaintiff's liver function, or any need for a transplant. (Dkt. #9 at 1066, 1068).

To the contrary, Dr. Siaw's examination findings were generally unremarkable, with plaintiff presenting with "no complaints" and displaying normal gait, normal range of motion, no evidence of muscle weakness, etc. Her anemia was ascribed to heavy menstrual flow, and treated with hormone and vitamin supplements, and her liver cirrhosis was typically assessed as "stable" or "improv[ing]" due to plaintiff remaining "alcohol free." (Dkt. #9 at 489-90, 491-92, 494-95, 496-97, 498-99, 501-502 1039-40, 1042-43, 1045-46, 1048-49, 1051-52, 1054-55, 1057-58, 1060-61, 1063-64, 1066-67, 1069-70). There is no evidence of record to substantiate – and Dr. Siaw's treatment records flatly contradict – Dr. Siaw's notation on his June 9, 2015 opinion that plaintiff was on a liver transplant list at the time, or that she medically required a liver transplant. (Dkt. #9 at 1066-69). As of July 1, 2015, when Dr. Siaw's last progress note of record was written, he noted that plaintiff's "[a]nemia is better" according to lab results, and her "[h]epatic encephalopathy continues to improve clinically." (Dkt. #9 at 1039-40).

In brief, while a treating physician's opinion is entitled to controlling weight where it is "well supported by medical findings," the opinion by Dr. Siaw is unaccompanied by any explanation or reference to objective testing. Furthermore, the opinion appears to focus exclusively on limitations resulting from plaintiff's cirrhosis of the liver and anemia (which are the only "Medical Condition[s]" for which limitations are specified), and does not opine any limitations resulting from plaintiff's back pain, anxiety or depression, even though they are listed among her diagnoses. (Dkt. #9 at 1361-62). Because substantial evidence of record – including Dr. Siaw's own treatment notes – establishes that plaintiff's cirrhosis and anemia improved

steadily from February 2014 through July 2015, the ALJ's conclusion that Dr. Siaw's opinion was entitled to "little" weight was well-supported.

In sum, the reasons given by the ALJ for the weight assigned to Dr. Siaw's opinion – including its inconsistency with the medical evidence of record and Dr. Siaw's own treatment notes – were good reasons for declining to afford Dr. Siaw's contrary opinion controlling weight. *Halloran*, 362 F.3d at 32.

In summary, I find that the weight given by the ALJ to the opinion of plaintiff's treating physician was appropriate, and that the ALJ's decision is supported by substantial evidence, and is not the product of legal error.

## II. Plaintiff's Combined Impairments

Plaintiff also argues, without elaboration, that the ALJ erroneously failed to consider the combined effect of plaintiff's several severe impairments. The Court disagrees. The ALJ discussed all of plaintiff's severe impairments in detail, reviewed the medical opinions of record with respect to both exertional and nonexertional limitations, and considered plaintiff's testimony concerning her activities of daily living. His RFC finding includes limitations that appear specifically calculated to address plaintiff's exertional, postural and mental limitations. Plaintiff does not identify any specific severe impairment that the ALJ failed to consider, and points to evidence that the ALJ overlooked. I therefore find no reason to disturb the ALJ's decision.

**CONCLUSION**

For the forgoing reasons, I find that the ALJ's decision was supported by substantial evidence, and was not the product of reversible legal error. The plaintiff's motion for judgment on the pleadings (Dkt. #12) is denied, the Commissioner's cross motion for judgment on the pleadings (Dkt. #19) is granted, and the complaint is dismissed.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
March 30, 2020.